UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARK E. MLYNSKI,

        Plaintiff,

v.                             Case No:  8:16-cv-129-T-23AEP

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, it is recommended that the Commissioner's decision be affirmed.

**I.**

A.      **Procedural Background**

Plaintiff filed an application for a period of disability and DIB (Tr. 161-69).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 81-112, 115-22).  Plaintiff then requested an administrative hearing (Tr. 123-24).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 35-80).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 15-31).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-14).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. § 405(g).

**B.      Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1969, claimed disability beginning December 31, 2005 (Tr. 248).  Plaintiff has a college education (Tr. 38, 252).  Plaintiff's past relevant work experience included work as an appointment setter and program coordinator, waiter, dining hall manager, and chef (Tr. 67-71, 253).  Plaintiff alleged disability due to rheumatoid arthritis and joint damage (Tr. 252).

In rendering the administrative decision, the ALJ concluded that Plaintiff last met the insured status requirements on March 31, 2012, and had not engaged in substantial gainful activity since December 31, 2005, through the date last insured of March 31, 2012 (Tr. 20). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: rheumatoid arthritis ("RA"), obesity, history of total left hip arthroplasty, hypertension, and degenerative disc disease ("DDD") of the right knee (Tr. 20).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work, with the following restrictions: frequent balancing when standing or walking on level terrain; occasional stooping; elevation on a foot stool of about twelve inches for both feet; frequent handling and fingering; required an assistive device for ambulation and standing; and only occasionally reach overhead (Tr. 21).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely credible (Tr. 22).  Considering Plaintiff's noted impairments and

the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform his past relevant work, which was a composite job of an appointment setter and a program coordinator (Tr. 25).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 25).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.

20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*).

### III.

Plaintiff argues here that the ALJ erred by (1) failing to articulate good cause for not crediting the opinion of treating physicians Dr. Joseph Yeh and Dr. Patrick O'Neill; (2) failing to properly consider Plaintiff's ankle, foot, hand, and wrist impairments; and (3) failing to

4

properly assess Plaintiff's credibility.  For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

### A.  Medical Opinions

Plaintiff first contends that the ALJ failed to articulate good cause for discounting the opinions of Dr. Yeh and Dr. O'Neill.  When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted).  The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence.  *See* 20 C.F.R. § 404.1527.  In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization.  20 C.F.R. § 404.1527(c).  For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive.  20 C.F.R. § 404.1527(c)(3).  Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive.  20 C.F.R. § 404.1527(c)(4).  Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted).  Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*).

### i. Dr. Yeh

Dr. Yeh, Plaintiff's primary care physician, opined in April 2014 that Plaintiff could sit in a working position at a desk or table without reclining for a total of two hours in an eight-hour workday, with both feet elevated; could stand or walk less than an hour during an eight-hour workday; should rest lying down or reclining in a supine position in bed or in an easy chair for five hours in an eight-hour workday to relieve pain and fatigue arising from a documented impairment, relieve leg edema in both legs with the right greater than the left, and relieve severe right foot and ankle pain; could rarely or never lift or carry anywhere from 1-50 pounds; could frequently balance when standing or walking on level terrain; and could rarely or never stoop, meaning bending the body downward and forward by bending the spine at the waist (Tr. 607-08).  According to Dr. Yeh, Plaintiff's condition existed and persisted with such restrictions since Plaintiff's treatment began with Dr. Yeah in 2009 (Tr. 459, 608).  Dr. Yeh based his opinion upon his diagnoses of RA and obesity as well as rheumatology and orthopedics evaluations (Tr. 609).  In considering Dr. Yeh's opinion, the ALJ stated:

> The undersigned affords some weight to the opinion of Joseph Yeh, M.D., the claimant's primary care physician since 2009....  While the undersigned allowed for some of Dr. Yeh's limitations, such as elevating feet, some of his limitations, such as requiring rest five hours in an eight hour workday and never being able to stoop or lift even one pound, are wholly unsupported by the record, including Dr. Yeh's own treatment records.

(Tr. 25).

As the ALJ correctly concluded, the evidence of record, including Dr. Yeh's own treatment notes did not support some of the extreme limitations set forth by Dr. Yeh.  For example, medical records from Dr. Natali Balog indicated that, from 2006 to 2008, Plaintiff reported that he experienced chronic issues with his hip and chronic inflammation of his knee, but the knee did not bother him, and he was feeling fairly well and doing very well with no major issues with his hands, elbows, wrists, feet, or other joints while showing a good response

to medication (Tr. 356-63, 365-66).  Records from Dr. Edward Stolarski from 2010 indicate that Plaintiff was doing very well or great and was even walking well two weeks after hip surgery and was kayaking and working around the house five months after surgery with no ambulatory aids (Tr. 432-37).  Additionally, Dr. Yeh's treatment records from 2009 and 2010 repeatedly indicated completely normal findings with respect to Plaintiff's general health, extremities, spine, and neurological system (Tr. 453-461).[1]

Plaintiff's reported daily activities also belied Plaintiff's assertions as to his limitations during the relevant period.  *See* 20 C.F.R. § 404.1529(c)(3)(i).  Plaintiff worked as many as thirty hours per week at certain points throughout the period as a wine distributor, painter, chef, and realtor (Tr. 47-48, 67, 237, 253, 324, 482, 584).  As noted above, Plaintiff also reported kayaking and working around the house (Tr. 432-37).

Notwithstanding Plaintiff's reported daily activities and the mild findings made by Dr. Balog and Dr. Stolarski and, more notably, Dr. Yeh's own completely normal findings, Dr. Yeh opined that Plaintiff needed to rest for five out of eight hours per workday and could not stoop or lift even one pound (Tr. 25, 607-09).  As the ALJ thoroughly discussed, such extreme limitations simply did not find support in the record (Tr. 22-25).  Given that Dr. Yeh's opinion was not consistent with the other evidence of record and conflicted with his own treatment records, good cause existed for the ALJ to afford Dr. Yeh's opinion less than substantial weight. *See Phillips*, 357 F.3d at 1240-41; *Sryock*, 764 F.2d at 835.

Plaintiff additionally argues that Dr. Yeh's board certification in internal medicine required the ALJ to afford Dr. Yeh's opinion greater weight.  Generally, more weight is given to the opinion of a specialist about medical issues related to his or her area of specialty rather

_____

[1] Dr. Yeh continued to assess completely normal findings with respect to Plaintiff's musculoskeletal and neurological systems upon examination in August and September 2012 after the date last insured (Tr. 498-99, 505-06, 511-12, 585-86).

than to the opinion of a medical source who is not a specialist.  20 C.F.R. § 404.1527(c)(5).  As the Commissioner contends, however, Dr. Yeh did not provide any specialized care to Plaintiff and instead simply treated Plaintiff in the role of primary care physician (*see* Tr. 459, 464, 524).  Furthermore, Dr. Yeh based his opinion about Plaintiff's functional limitations not upon his own expertise in internal medicine but on Plaintiff's rheumatology and orthopedic specialists (Tr. 609).  Given that Dr. Yeh's purported specialty did not form the basis for his opinion about Plaintiff's functional limitations, the ALJ was not required to afford the opinion more weight on that basis.[2]  *See* 20 C.F.R. § 404.1527(c)(5).

In sum, the ALJ properly determined that Dr. Yeh's opinion should only be afforded some weight as some of his more extreme limitations were not supported by the evidence of record, including Dr. Yeh's treatment notes.  As such, the ALJ established good cause for affording Dr. Yeh's opinion less than full weight.  The fact that Dr. Yeh maintained board certification in internal medicine did not warrant the ALJ affording Dr. Yeh's opinion more significant weight.  In considering Dr. Yeh's opinion, therefore, the ALJ afforded it the proper weight and applied the proper legal standards, and the decision is supported by substantial evidence in that regard.

### ii.  Dr. O'Neill

Dr. O'Neill, Plaintiff's treating orthopedist, opined in March 2014 that Plaintiff could sit in a working position at a desk or table without reclining for approximately six hours in an eight-hour workday; could stand and walk about one hour in an eight-hour workday; should rest lying down or reclining in a supine position in bed or in an easy chair for two hours in an eight-hour workday to relieve pain arising from a documented medical impairment;  could lift

---

[2]  Regardless, a medical source's specialization is just one of many factors the ALJ considers in determining the weight to afford any medical opinion.  20 C.F.R. § 404.1527(c).

one to five pounds frequently, lift six to ten pounds occasionally, and lift eleven to twenty-one

pounds rarely or never; could occasionally balance when standing or walking on level terrain;

and could rarely or never stoop, meaning bending the body downward and forward by bending

the spine at the waist (Tr. 559-60).  Dr. O'Neill opined that Plaintiff's condition existed and

persisted for the prior three years and noted that his opinion was premised upon Plaintiff's RA

and X-rays and physical exams (Tr. 560).  In considering Dr. O'Neill's opinion, the ALJ stated:

> Finally, the undersigned affords little weight to the opinion of Patrick O'Neill,
> M.D., the claimant's treating orthopedist, even though Dr. O'Neill's opinion is
> generally in line with the sedentary exertional level....  This is because contrary
> to the claimant's testimony of long-term treatment with Dr. O'Neill, the
> claimant's first visit was September 24, 2012, well after the date last insured....
> The undersigned afforded little weight to Dr. O'Neill's testimony, rather than no
> weight, because Dr. O'Neill did have the opportunity to review the claimant's
> medical records from the period prior to the date last insured.  However, Dr.
> O'Neill incorrectly incorporated his findings after March 31, 2012, into his
> assessment, as indicated at the end of his Medical Source Statement

(Tr. 25).

As the ALJ properly determined, Dr. O'Neill's opinion relied upon evidence after

Plaintiff's date last insured as Dr. O'Neill did not even initially treat Plaintiff until after the date

last insured (Tr. 523-24, 555-57, 577).  Indeed, Dr. O'Neill stated that his opinion was based

upon X-rays and physical examinations and that Plaintiff's condition persisted with restrictions

for the prior three years from the date of his opinion on March 4, 2014 (Tr. 560).  To be eligible

for DIB, however, a claimant must demonstrate disability *on or before* the last date for which

he or she was insured.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*);

*see* 42 U.S.C. §§ 416(i)(3), 423(a) & (c); *see* 20 C.F.R. §§ 404.101, 404.130, 404.131.  In this

instance, Plaintiff's date last insured was March 31, 2012 (Tr. 20).  Given that Dr. O'Neill

treated Plaintiff subsequent to the date last insured and based his opinion mainly upon evidence

created after Plaintiff's date last insured, the ALJ properly discounted Dr. O'Neill's opinion as

such evidence was irrelevant to whether Plaintiff was disabled *on or before* the date last

insured.[3]  *See Adamo v. Comm'r of Soc. Sec.*, 365 F. App'x 209, 213 (11th Cir. 2010) (upholding the ALJ's decision to reject a physician's report in its entirety where, among other things, the opinion relied upon evidence created after the date last insured); *cf. McClain v. Comm'r, Soc. Sec. Admin.*, No. 16-12312, 2017 WL 242981, at *2 (11th Cir. Jan. 20, 2017) (*per curiam*) (noting that an ALJ did not err by failing to address evidence that discussed the claimant's condition outside the timeframe that the claimant would qualify for benefits since the ALJ was tasked with determining whether the claimant was disabled between the onset date and the date last insured).

Furthermore, as the Commissioner contends, the evidence prior to the date last insured does not indicate Plaintiff experienced the same severity of foot and ankle pain that Plaintiff experienced after the date last insured.  For instance, in 2011 and 2012, Plaintiff did not complain of ankle and foot pain to the extent that he later complained to Dr. O'Neill after the date last insured, but, rather, Plaintiff complained mainly of issues in the right knee (Tr. 47, 470, 477-78, 482, 523-24, 555-57, 577).  Prior to the date last insured, Plaintiff complained of some pain, tenderness, and stiffness in his right ankle but maintained the ability to perform work involving a substantial amount of walking (Tr. 47, 470, 477-78, 482).  In September 2012, at his initial appointment with Dr. O'Neill, Plaintiff reported some pain in the ankle and foot that occurred after a high-activity period about three weeks prior to the appointment (Tr. 523).  At that time, Dr. O'Neill noted some swelling, tenderness, and thickening of the left ankle and foot but concluded that Plaintiff had good motion and strength, intact sensation, and palpable pulses (Tr. 523).  In 2013, Plaintiff later experienced severe tenderness and received injections

---

[3]  Notably, as the decision indicates, the ALJ did not completely reject Dr. O'Neill's opinion on that basis.  Rather, the ALJ afforded the opinion little weight but still considered the limitations set forth by Dr. O'Neill as they were consistent with the sedentary exertional level.

from Dr. O'Neill for the recurrent tenderness and pain (Tr. 555-57, 577).  Such decline after the date last insured is irrelevant, however.  "If a claimant becomes disabled after losing insured status, his DIB claim will be denied despite a disability."  *McClain*, 2017 WL 242981, at *1 (citation omitted).  Accordingly, Dr. O'Neill's reliance upon the treatment notes and complaints by Plaintiff after the date last insured provided good cause for the ALJ to discount Dr. O'Neill's opinion, as the evidence created prior to the date last insured did not support Dr. O'Neill's opinion in its entirety.  *See Phillips*, 357 F.3d at 1240-41; *Sryock*, 764 F.2d at 835.  As such, the ALJ did not err in affording little weight to the opinion of Dr. O'Neill, and substantial evidence supports the ALJ's decision in that regard.

### B.  Impairments

Plaintiff next argues that the ALJ failed to properly consider Plaintiff's ankle, foot, hand, and wrist impairments.   Plaintiff essentially contends that the ALJ failed to properly assess Plaintiff's RFC because the ALJ did not consider all of Plaintiff's impairments.  At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545.  To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms.  20 C.F.R. § 404.1545(a)(1).  In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all of the other evidence of record and will consider all of the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole").

In the decision, the ALJ concluded that Plaintiff retained the RFC to perform a reduced range of sedentary work,[4] including limitations regarding balancing, stooping, handling, fingering, ambulating, standing, and reaching (Tr. 21-25).  Plaintiff fails to demonstrate how the RFC fails to account for any purported ankle, foot, hand, or wrist limitations or to otherwise demonstrate how he was limited by such impairments.  Plaintiff may not simply rely upon the diagnosis of a particular impairment to demonstrate an inability to perform work functions since the diagnosis of an impairment does not equate to limitations upon an ability to work.  "Diagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings." *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) (citations omitted).  "Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself."  *Davis v. Barnhart*, 153 Fed. App'x 569, 572 (11th Cir. 2005) (*per curiam*).  Furthermore, the severity of a medically ascertained impairment is not measured in terms of deviation from purely medical standards of bodily perfection or normality but rather in terms of its effect upon ability to work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

With respect to Plaintiff's foot and ankle impairments, the only evidence created prior to the date last insured that Plaintiff points to in support of his contention is the finding by Dr. Desmond O'Duffy in January 2012 that Plaintiff had a nodule in the area of his Achilles tendon on his left ankle and pain and tenderness below the right ankle (Tr. 470-71).  Dr. O'Duffy's treatment record did not indicate that Plaintiff suffered from an ankle or foot impairment that limited Plaintiff's ability to work prior to the date last insured in any way.  As noted, simply being diagnosed with a nodule and tenderness does not suffice to demonstrate limitations upon

---

[4] Sedentary work involves lifting no more than 10 pounds at a time; occasionally lifting or carrying articles like docket files, ledgers, and small tools; sitting; and occasionally walking and standing.  20 C.F.R. § 404.1567(a).

ability to work.  Dr. O'Neill's subsequent findings in September 2012, after the date last insured, do nothing to further Plaintiff's contention with regard to Plaintiff's ankle and foot impairments.  Dr. O'Neill determined in September 2012 that Plaintiff experienced some tenderness and swelling in the foot and ankle and thickness of the Achilles tendon but also noted that Plaintiff had good motion, good strength, intact sensation, and palpable pulses (Tr. 523).  Plaintiff's assertion that his foot and ankle impairments were severe and ongoing or limited Plaintiff in any way prior to the date last insured simply does not find support in the record.

Similarly, Plaintiff's contention regarding limitations during the period at issue due to his hand and wrist impairments do not find support in the record.  In May 2006, Plaintiff's wrists were without synovitis and had fairly well-maintained range of motion with no other abnormalities present with regard to the hands or wrists (Tr. 365).  An X-ray in August 2006 indicated early arthritic changes of the right and left hand, particularly severe on the right, which was noted as typical of early RA (Tr. 364).  An old healed left distal radial fracture with orthopedic fixation was also noted in the X-ray (Tr. 364).  In November 2006, Plaintiff's wrists showed reduced range of motion but no synovitis or other abnormalities were noted with regard to the hands or wrists (Tr. 349).  In March 2010, Dr. O'Duffy noted that radiology previously had shown some erosion in the hands but also noted that Plaintiff had been off of Humira for treatment of RA due to Plaintiff's hip surgery and the decision to put Plaintiff back on Humira would depend upon the reemergence of RA (Tr. 488).  According to Dr. Duffy, Plaintiff agreed that there was not a great deal of evidence of RA at the time so Plaintiff remained off of Humira (Tr. 488).  In January 2012, no obvious synovitis was noted in the hands and no other abnormalities were noted with regard to the hands or wrists (Tr. 470).

Based on the evidence of record, the ALJ properly determined that Plaintiff did not have a severe foot, ankle, hand, or wrist impairment or that any such impairment limited Plaintiff's

13

ability to work.  The decision indicates that the ALJ properly considered the evidence of the record in its entirety in determining Plaintiff's RFC (Tr. 18-25).  Though the ALJ did not discuss Plaintiff's purported foot, ankle, hand, or wrist impairments, the decision shows that the ALJ considered Plaintiff's medical condition as a whole and the evidence of record for the relevant period at issue.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that no rigid requirement exists that requires the ALJ to specifically refer to every piece of evidence in the decision, so long as the ALJ's decision is not a broad rejection which is not enough to enable a district court to conclude that the ALJ considered the claimant's medical condition as a whole).  The decision indicates that the ALJ thoroughly considered the evidence of record and incorporated the limitations into the RFC supported by the evidence.  Plaintiff fails to identify any foot, ankle, hand, or wrist limitations not accounted for by the ALJ in the RFC assessment or why the limitations set forth in the RFC for a reduced range of sedentary work fail to suffice.  Since the decision indicates that the ALJ appropriately considered Plaintiff's condition as a whole and the RFC accounts for all credible limitations supported by the evidence of record, the ALJ did not err in failing to explicitly discuss Plaintiff's foot, ankle, hand or wrist limitations.  The ALJ applied the proper legal standards, and substantial evidence supports the decision.

### C.  Credibility

Finally, Plaintiff asserts that the ALJ failed to properly assess Plaintiff's credibility as to his subjective complaints.  In addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence.  *See* 20 C.F.R. § 404.1529.  In social security disability cases, credibility determinations fall within the province of the ALJ.  *Moore*, 405 F.3d at 1212.  To establish a

14

disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225; *see* 20 C.F.R. § 404.1529. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1562 (citation omitted).

Here, the ALJ concluded that, though Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible (Tr. 22). In doing so, the ALJ properly relied upon the medical records, and inconsistencies between Plaintiff's statements and the record, as well as Plaintiff's ability to perform work during the relevant time period and Plaintiff's daily activities. Namely, as the ALJ discussed, Plaintiff's severe complaints contrasted with the evidence of record (Tr. 22-24). As noted, despite Plaintiff's complaints of debilitating limitations, treatment notes during the relevant time period consistently indicated that Plaintiff experienced improvement due to medication and was often doing well or very well and engaging in a range of activities, including taking care of himself, handling housework and maintenance, and performing work and a range of other activities in varying capacities (Tr. 22-24, 262-68, 271-76, 282-97, 349, 352, 356-63, 365-66, 432-37, 453-61, 446, 488). Physical examinations demonstrated that Plaintiff could ambulate well without the use of an assistive device and often presented with either controlled or no stiffness, swelling, or synovitis (Tr. 23, 349, 433, 437, 470. 477-78, 482). Such findings conflict and are

15

inconsistent with Plaintiff's allegations of extreme limitations.   In making a credibility determination, the ALJ considers both inconsistencies in the evidence and the extent to which any conflicts exist between the claimant's statements and the rest of the evidence, including the claimant's history, signs and laboratory findings, and statements by treating or nontreating sources or other persons about how the symptoms affect the claimant.   20 C.F.R. § 404.1529(c)(4).   Given the inconsistencies with Plaintiff's subjective complaints and the evidence of record, the ALJ appropriately found Plaintiff's subjective complaints less than fully credible.

Plaintiff next asserts that, in rendering the credibility finding, the ALJ improperly failed to discuss Plaintiff's side effects of fatigue and diarrhea from medication, which Plaintiff discussed during the administrative hearing (Tr. 54-55).   In assessing a claimant's subjective complaints, the ALJ considers the type, dosage, effectiveness, and side effects of any medication a claimant takes or has taken to alleviate pain and other symptoms.   20 C.F.R. § 404.1529(c)(3)(iv).   In the decision, the ALJ discussed Plaintiff's use of medication, including Humira, and noted that Plaintiff repeatedly presented as doing well and improving with his medication (Tr. 22-23, 349, 356, 358, 360, 362, 365, 432, 433, 435, 437, 453-61).   At one point, in May 2006, Plaintiff even reported that he was "very happy with how the medications are working" and was "very happy with the Humira, not having any problems with it" (Tr. 365). Indeed, the record indicates that Plaintiff did not complain about diarrhea or fatigue, debilitating or otherwise, in conjunction with his medication.   Given the lack of any evidence in the record regarding these purported side effects, the ALJ did not err in omitting a discussion of the side effects in the decision.   The decision demonstrates that the ALJ properly considered Plaintiff's use of medication and considered Plaintiff's condition as a whole (Tr. 22-24).   Since no rigid requirement exists that the ALJ specifically refer to every piece of evidence or every complaint,

and given that the ALJ's decision was not simply a broad rejection of Plaintiff's complaints, the ALJ did not err in failing to consider Plaintiff's purported medication side effects of fatigue and diarrhea.  *See Dyer*, 395 F.3d at 1211 (citation omitted).

Plaintiff also contends that the ALJ improperly asserted that Plaintiff worked throughout the relevant time period.  In considering Plaintiff's subjective complaints, the ALJ noted that, through the relevant time period, Plaintiff worked twelve to thirty hours per week as a painter, realtor, chef, and wine merchant (Tr. 23).  Despite Plaintiff's contention to the contrary, the record supports such a finding.  As the Commissioner points out, the record is replete with Plaintiff's statements regarding work he performed throughout the relevant time period, with varying degrees of exertion and time spent on each (Tr. 46-48, 54, 65-66, 67-68, 237, 253, 352, 360, 362, 365, 460, 464, 482, 497).  Though Plaintiff may not have reported his earnings for such work or earned a large income from such work, and therefore such work did not constitute substantial gainful activity, the fact that Plaintiff could perform work during the period in which he claimed to be disabled weighs against Plaintiff's assertion of debilitating limitations, and the ALJ properly considered such work in making a credibility determination.  Indeed, any work that a claimant performs during any period in which the claimant alleges disability, even if the work does not rise to the level of substantial gainful activity, may demonstrate that the claimant maintains the ability to perform work at the substantial gainful activity level.  20 C.F.R. § 404.1571; *see Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1984).  Accordingly, in setting forth a credibility determination, the ALJ did not err in considering the work Plaintiff performed during the relevant time period as such work weighed against a finding that Plaintiff's subjective complaints were credible.

Plaintiff further argues that, in making the credibility determination, the ALJ failed to properly consider Plaintiff's susceptibility to infection given that Plaintiff suffered from a

17

MRSA infection shortly after surgery.  In the decision, the ALJ stated that, during the relevant time period, Plaintiff did not have any illnesses, aside from an occasional cold, which belied Plaintiff's assertions of a suppressed immune system (Tr. 23).  As the Commissioner contends, Plaintiff's MRSA infection occurred right after Plaintiff's hip surgery and was successfully treated shortly thereafter (Tr. 398, 433, 435).  Beyond that, the record demonstrates that Plaintiff did not experience any other serious infections or illnesses during the relevant time period, as correctly stated by the ALJ.  In fact, in May 2006, Dr. Balog noted that Plaintiff stated that he had "a few infections, mainly head-type infections with nose infections, but he feels it is mainly related to the weather" (Tr. 365).  The ALJ's statement regarding Plaintiff's lack of serious infections during the relevant period from 2005 through early 2012, with the exception of the brief MRSA infection, accurately reflects the evidence of record.  Plaintiff failed to demonstrate that his purported susceptibility to infection led to any other serious infections during the relevant time period or otherwise affected his ability to work.  As such, the ALJ appropriately found Plaintiff's assertions regarding a suppressed immune system not entirely credible.

Based on the foregoing, the ALJ properly considered Plaintiff's subjective complaints. In concluding that Plaintiff's subjective complaints were not entirely credible, the ALJ applied the proper legal standards.  Substantial evidence supports the ALJ's decision in that regard.

**IV.**

After due consideration, it is hereby

RECOMMENDED:

1.  The decision of the Commissioner be affirmed.

2.  The Clerk be directed to enter final judgment in favor of the Commissioner and close the case.

18

IT IS SO REPORTED in Tampa, Florida, on this 1st day of February, 2017.

ANTHONY E. PORCELLI
United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.


cc:    Hon. Steven D. Merryday
       Counsel of Record